UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KNIGHTBROOK INSURANCE COMPANY, | : : : : |
| Plaintiff, | : : |
| v. | : : : : Case No. 2:13-cv-02961-sd : |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER C5P31288 A/S/O MARIANNA ARAKELOVA, et al, | : : : : : : |
| Defendants. | : : |

## JOINT MEMORANDUM OF LAW CONCERNING ABSTENTION

Plaintiff, KnightBrook Insurance Company ("KnightBrook"), and Defendants, Certain Underwriters at Lloyd's, London Subscribing to Policy Number C5P31288 a/s/o Marianna Arakelova ("Lloyd's"), and Northfield Insurance Company (collectively the "Parties"), by their undersigned attorneys, submit the following Memorandum of Law in response to the Court's Order of September 10, 2013.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

KnightBrook issued a commercial automobile policy (the "Policy") to its insured, DNA Ambulance, Inc. ("DNA"). In May 2012, Lloyd's commenced a civil action ("the Underlying Action") against DNA in the Court of Common Pleas of Philadelphia County, Pennsylvania for damages arising out of an incident that occurred on or about December 27, 2010. A true and correct copy of the Complaint in the Underlying Action is attached hereto as Exhibit A.

In the Underlying Action, Lloyd's alleges that on or about December 27, 2010, an employee, servant, workmen, agent and/or contractor of DNA sprayed a starting fluid onto the air intake of an ambulance owned by DNA and then attempted to start the vehicle. It is further alleged when the employee, servant, workmen, agent and/or contractor of DNA attempted to start the vehicle, the highly flammable starting fluid came into contact with components in the engine compartment causing a fire. The fire then ignited which spread to the property in which the vehicle was parked, causing fire and smoke damage. Lloyd's also alleges that the fire was caused by the negligence of the employee, servant, workmen, agent and/or contractor of DNA, and caused damage to the property owned by its insured, Marianna Arakelova ("Arakelova") and that the damages to Arakelova's property were covered under an insurance policy issued by Lloyd's to Arakelova and that Lloyd's paid claim monies to Arakelova on its policy. Therefore, Lloyd's filed suit in the Underlying Action as the subrogee to Arakelova.

KnightBrook filed the current action alleging that coverage does not exist under the Policy for the claims asserted against DNA. A true and correct copy of KnightBrook's Amended Complaint, without exhibits, is attached hereto as Exhibit B. Specifically, KnightBrook avers that coverage does not exist under the Policy pursuant to an exclusion which excludes coverage for property damage to property owned by the insured, the "Care, Control or Custody Exclusion":

The Policy provides, in pertinent part, as follows:

> **COVERAGE A – LIABILITY TO OTHERS**
>
> **A.** *We* will pay for the benefit of *insureds*, up to the applicable limit of liability (see Part II D) shown in the Declarations, those sums that *insureds* become legally liable to pay as damages because of *bodily injury* or *property damage* insured in this policy that is caused by an *accident* and results from the maintenance, ownership, or use of a covered *auto.*
>
> Such *accident* must occur during the policy term and take place within the applicable coverage territory (see Common Conditions).
>
> **PART IIC LIABILITY NOT INSURED**
>
>          \*         \*         \*
>
> **1. CARE, CONTROL, OR CUSTODY EXCLUSION**
>
> *We* do not insure *property damage* to property in the care, control, or custody of the *insured* or to property owned or transported by the *insured*. This does not apply to liability assumed under a written sidetrack agreement.

See Ex. B at ¶¶ 26-27.

It is KnightBrook's position that Lloyd's has asserted a claim against DNA for damage to property owned by Arakelova, the same individual who also owns KnightBrook's insured, DNA, and therefore, the Care, Control or Custody Exclusion is applicable.

In addition, KnightBrook argues that coverage does not exist under the Policy pursuant to an exclusion which excludes coverage for bodily injury which is caused by an insured's knowing endangerment. See Ex. B at ¶ 29.

The Policy provides in pertinent part as follows:

**5. ENDANGERMENT OR HARM EXCLUSION**

*We* do not insure *bodily injury* or *property damage* which is a consequence of an *insured's* willful act or knowing endangerment.

See Ex. B at ¶ 30.

Based on the above, it is KnightBrook's position that to the extent that the individual who sprayed the starting fluid on the ambulance was an insured under the Policy, and/or engaged in a willful act or knowing endangerment, there is no coverage under the Policy. See Ex. B at ¶ 31.

In this action, KnightBrook seeks a declaration that there is no coverage or potential coverage under the Policy and that it does not owe a defense or indemnity in this matter to DNA. The Underlying Action has been stayed pending the outcome of this case.

Upon information and belief, KnightBrook's insured, DNA, is no longer in business. Lloyd's contends that the "Care, Control or Custody Exclusion" is not applicable because it applies to tangible property and that the Policy expressly covers leased premises. Finally, Lloyd's contends that the "Endangerment or Harm Exclusion" is not applicable because the negligence, carelessness and/or omissions of DNA Ambulance was not a knowing endangerment.

The Parties agree that this Court should accept jurisdiction of this case and have submitted this Joint Memorandum of Law in support of this position.

## II.     BRILLHART, WILTON AND SUMMY

The question raised by the Court is whether it should abstain from exercising that jurisdiction. The Court has asked for briefing on this issue in light of Brillhart v. Excess Insurance Company of America, 316 U.S. 491 (1942), Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) and State Auto Ins. Companies v. Summy, 234 F.3d 131, 134 (3d Cir. 2000).

### A.     Brillhart

In Brillhart, supra, the Excess Insurance Company of America ("Excess") brought a declaratory judgment suit in federal district court against Dewey Brillhart, administrator of the estate of James Dwight Brillhart, deceased ("Brillhart"), for a declaratory judgment to determine rights under a reinsurance agreement. Brillhart moved to dismiss the suit, principally on the ground that the issues involved in the suit could now be decided in a pending state court action and the District Court dismissed the action, apparently because of a reluctance to prolong the litigation. 316 U.S. at 493. The Tenth Circuit held that dismissal of the suit was an abuse of discretion, but instead of remitting the cause for a proper exercise of the District Court's discretion, reversed the judgment with directions that the District Court proceed to a determination on the merits.

In reversing the Tenth Circuit, the Court in Brillhart determined:

> Where a district court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties

5

have been joined, whether such parties are amenable to process in that proceeding, etc.

316 U.S. at 495.

Accordingly, the Court in Brillhart set the parameters for a District Court in exercising its discretion as to whether to retain jurisdiction or not when there is a pending state court action.

### B. Wilton

In Wilton, supra, certain "London Underwriters" had insured The Hill Group.  The London Underwriters refused to defend or indemnify The Hill Group when it was sued.  That suit went to trial and a $100 million verdict was entered.  The London Underwriters filed a declaratory judgment action against The Hill Group in federal court, seeking a declaration that it was not obligated to provide coverage to The Hill Group for the allegations in that suit.  The Hill Group, along with co-defendants from the underlying suit, then filed their own declaratory judgment action in a Texas state court.  Because a number of Texas-based insurers were named as defendants in the state court action, that action could not be removed to federal court.  The District Court stayed the federal declaratory judgment action.  The Fifth Circuit reversed the stay decision, but the Supreme Court reversed the Fifth Circuit.  It reasoned that the existence of the parallel state court proceeding was a sufficient basis upon which the District Court might decide to abstain from exercising jurisdiction.  The Supreme Court in Wilton stated:

> But Brillhart indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference," ibid., if it permitted the federal declaratory action to proceed.

515 U.S. at 283.

6

The Supreme Court in Wilton ended its opinion by stating that it was not ruling whether District Courts should have discretion to abstain from deciding declaratory judgment actions when are no parallel state proceedings; it concluded "only that the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court." 515 U.S. at 290. However, the Supreme Court clearly indicated that in the absence of a parallel state court proceeding, the rationale behind abstention would not exist. Id.

### C. Summy

In Summy, a suit for damages was brought on behalf of a child who was allegedly poisoned by lead paint in his home, a structure owned by E&J Rentals ("E&J"). E&J sought coverage from its liability carrier, State Auto Insurance Company ("State Auto"). State Auto took the position that coverage was excluded by the pollution exclusion, and filed a declaratory judgment action in federal court. E&J responded in two ways; it asked the court to abstain, and it filed its own declaratory judgment action in state court.

The Third Circuit in Summy discussed those factors that District Courts should consider when deciding whether to hear declaratory judgment actions involving insurance coverage issues:

> For cases ... where district courts must decide whether to hear declaratory judgment actions involving insurance coverage issues, we have suggested relevant considerations:

    1. A general policy of restraint when the same issues are pending in a state court;

    2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; [and]

    3. Avoidance of duplicative litigation.

234 F.3d at 134 (citations omitted).

    The Summy Court went on to state:

    These precedents counsel hesitation by federal courts in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled. See Mitcheson v. Harris, 955 F.2d 235, 240 (4th Cir. 1992) (noting that where there seemed to be equally relevant statements by the state courts on either side of the issue, it would be prudent to leave the question to be decided in the state proceeding). A federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation. See id. at 239 (noting that "the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof."). Moreover, district courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it. This is especially important in insurance coverage cases, although we do not mean to confine its relevance to that category.

Id. at 13.

    "Thus, courts are permitted to avoid gratuitous interference with state court matters by abstaining from claims for declaratory judgment, specifically if the state court proceedings would address 'the same issues, not governed by federal law, between the same parties.'" Marshall v. Lauriault, 372 F.3d 175, 183-84 (3d Cir. 2004) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995)).

The Third Circuit ruled in <u>Summy</u> that the District Court should have declined jurisdiction, for two reasons.  First, there was a parallel state court action (E&J's declaratory judgment action) pending which involved the exact same issues as the federal court action.  The Third Circuit ruled that it was not efficient to have two parallel actions pending at the same time.  Second, the coverage issue in question (whether the pollution exclusion applied to lead poisoning cases) was unsettled, with one panel of the Pennsylvania Superior Court at odds with another.

### III.   ARGUMENT

As discussed in full below, there is no parallel state court action involving the exact same issues as the current action and the coverage issues in question (care, custody and control/willful act or knowing endangerment) are not unsettled under Pennsylvania law.  Accordingly, this Court should retain jurisdiction in the present matter.

### A.   The Rationale Behind Diversity Jurisdiction

The Third Circuit in <u>Marshall v. Lauriault</u>, <u>supra</u>, characterized the Supreme Court's attitude towards abstention as "strong antipathy."  At the same time, the rationale behind diversity jurisdiction is to provide a level playing field for out-of-state parties.

In <u>Baltimore Bank for Cooperatives v. Farmers Cheese Co-op</u>, 583 F.2d 104, 112 (3d Cir. 1978), the Third Circuit reversed the District Court's decision to abstain, noting "Congress adopted the policy of opening the doors of the federal courts to all diversity cases involving the jurisdictional amount to assure suitors from a foreign

state of an impartial and neutral forum." See also Watson v. NCO Group, Inc., 462 F. Supp. 2d 641, 647 (E.D. Pa. 2006) ("[D]iversity jurisdiction was established, at least in part, to ensure a fair trial by protecting non-citizens from local prejudices potentially encountered in state court.") and Regis Associates v. Rank Hotels (Management) Ltd., 894 F.2d 193, 196 (6th Cir. 1990) ("We realize that some litigants perceive certain 'home court' advantages in litigating in a state court. However, this is one of the reasons why diversity jurisdiction still exists.").

### B. There Is No State Court Action In Which The Same Issues Are Pending

The discretionary abstention standard set forth in Brillhart, supra, and applied in Wilton, supra, was meant to apply only when there are parallel state court proceedings. This is because by allowing abstention the court wished to avoid piecemeal litigation, and the possibility of inconsistent results. As stated in Brillhart, "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 494. If there is no parallel state court proceeding, these problems would not exist.

As discussed above, the presence of a parallel state court proceeding was also the predicate for the Third Circuit's ruling in Summy. Citing to Summy, the Eastern District has refused, on numerous occasions over the past several years, to remand a declaratory judgment action where there was no parallel state court action with overlapping parties and issues. See Allstate Ins. Co. v. Century Indem. Co., 2007 WL 1575012, *2 (E.D. Pa. May 31, 2007) (Rufe, J.) ("Hence, without a showing that the applicable area of state law is unsettled, and in the absence of a parallel state-court

10

proceeding, this Court finds that the instant action does not fall within the ambit of Summy."), O'Neill v. GEICO Ins. Co., 2012 WL 3893167 (E.D. Pa. Aug. 30, 2012) (Bartle, J.), Westfield Ins. Co. v. Wertz, 2011 WL 2135579 (E.D. Pa. May 27, 2011) (Joyner, J.), and Continental Cas. Co. v. Peerless Industries Inc., 2007 WL 2029298 (E.D. Pa. Jul 11, 2007) (Pratter, J.). See also TIG Ins. Co. v. Tyco Intern., Ltd., 2009 WL 151597 (M.D. Pa. Jan 21, 2009) (Caputo, J.) and Canal Ins. Co. v. Paul Cox Trucking, 2006 WL 2828755 (M.D. Pa. Oct. 02, 2006) (Conner, J.) *(where the underlying case only deals with the motorist's negligence and does not address the issues of insurance coverage raised in the federal declaratory judgment action, then the actions are not parallel).*

In the current dispute, there is no parallel pending state court action. While there is a subrogation claim asserted by Lloyd's in the Underlying Action, there is only a partial overlap in parties and no overlap in issues. The state court action addresses those issues normally determined in a subrogation action: whether DNA had a duty, whether its breached that duty, and whether damages were caused by that breach. The issues raised in the current declaratory judgment action regarding the care, custody and control exclusion and the willful act or knowing endangerment exclusion in the Policy are not at issue in the Underlying Action. Were the Underlying Action to go to trial, there would be no resolution of these issues.

This case is similar to Westfield, supra (Exhibit C). There, Stephen and Diane Chesna filed a personal injury suit claiming injuries arising from a motor vehicle accident. They alleged that the accident was caused by Cynthia Wertz while she was driving a car owned by her employer, T. H. Properties. Westfield, which insured T.H.

Properties, claimed that Ms. Wertz did not have permission to drive the T. H. Properties car, and filed a declaratory judgment action in federal court seeking a declaration that it was not obligated to provide her with coverage, due to that non-permissive use. Judge Joyner accepted jurisdiction of the declaratory judgment action, stating:

> Here, unlike in Summy, there is no parallel declaratory judgment action in state court. Furthermore, the federal and state actions do not share the same underlying evidence or legal theories. The state court lawsuit is a negligence action seeking damages for personal injuries suffered by the Chesna Defendants in a motor vehicle collision allegedly caused by Ms. Wertz. As state court plaintiffs, the Chesna Defendants claim that Ms. Wertz, who is alleged to have been intoxicated at the time of the accident, failed to stop at a stop sign. Mr. Wertz is alleged to have negligently entrusted the vehicle to his wife, knowing her to be intoxicated. The dispute at issue in Westfield's declaratory judgment action, by contrast, is whether Mr. Wertz's employer, T.H. Properties, gave Ms. Wertz permission to use the vehicle.
>
> The two actions thus present distinct legal issues arising from different factual backgrounds. Any factual overlap between the two cases is not significant. As such, this factor weighs in favor of our exercising jurisdiction over the declaratory judgment action.

Westfield, supra, at *2-3.

As counseled by the Supreme Court in Brillhart, supra, this Court must determine whether "the claims of all parties in interest [to the federal action] can satisfactorily be adjudicated in [the underlying] proceeding." If not, then the court should take jurisdiction. 316 U.S. at 495.

    C.    **The Applicable State Law Is Not Unsettled**

The Third Circuit in Summy determined that abstention may be appropriate when a declaratory judgment action involves state law that is "close or unsettled." 316 U.S. at 495. That was in fact the case in Summy: at the time that State Auto filed its declaratory judgment action in federal court, there were conflicting

decisions both within the Pennsylvania Superior Court and among the various district courts sitting in Pennsylvania as to whether the pollution exclusion would apply to a claim of lead paint poisoning. This was in turn the key issue that State Auto was asking the District Court to decide. Because the case law was unsettled, the Third Circuit in Summy ruled that the District Court should have abstained.

By contrast, the state law in the present action is not unsettled. There are no conflicting cases, either in state or federal court, concerning the care, custody and control/willful act or knowing endangerment exclusions in the Policy. See Hartford Fire Ins. Co. v. B. Barks & Sons, Inc., 1999 WL 341972 (E.D. Pa. May 27, 1999) ("care, custody or control" exclusion found to be unambiguous under Pennsylvania law); Nationwide Mut. Ins. Co. v. Garzone, 2009 WL 2996468 (E.D. Pa. Sept. 17, 2009) (the care, custody, or control exclusion barred coverage through the insurer's policy); Allstate Ins. Co. v. McClymonds, 2007 WL 2254563 (W.D. Pa. Aug. 06, 2007) (in applying Pennsylvania law, Court determined that the intended harm exclusion in the applicable policy barred coverage).

Here, the only issue to determine whether either of the Policy exclusions bars coverage. As such, the litigants are simply asking this Court to apply settled law to the facts of the current case.

In Essex Ins. Co. v. Quick Stop Mart, Inc., 2008 WL 2928547 (E.D. Pa. Jul. 28, 2008), Judge Rufe was confronted with a number of issues that required her to apply Pennsylvania law to the facts of the claim. She was called upon to explore the parameters of the duty to defend, the scope of the duty to indemnify, the importance of the intent of the parties, the effect of ambiguities, and the burden of proof – which she

13

characterized as being settled areas of Pennsylvania law. She interpreted the meaning of the intentional acts exclusion and the negligent hiring exclusion to the Essex policy.

As a side note, although Essex Insurance Company was defending its insured in the state court action, and at the same time challenging its obligation to do so, Judge Rufe did not abstain under a conflict of interest analysis. The "conflict of interest" to which the Third Circuit refers in <u>Summy</u> is the potential conflict caused when the same issue would be decided by both the state court and the federal court. As explained by Judge Joyner in <u>Westfield</u>, supra:

> In <u>Terra Nova Insurance Co. v. 900 Bar</u>, 887 F.2d 1213 (3d Cir. 1989), the Third Circuit recognized the conflict of interest that could arise if "the same factual question' lies at the heart of both an insurance coverage dispute and the underlying tort action." <u>Id.</u> at *1225*. However, the court found in that case that there was no conflict of interest between the insurance company's putative duty to defend and its interest in avoiding coverage because "[t]here was no need for the district court to investigate or determine any facts at issue in the state fora to decide the coverage question." <u>Id.</u> at 1226.
>
> Likewise, here, the facts at issue in the state action are not at issue in the declaratory judgment action. Therefore, there is no danger that Westfield will "establish facts in the declaratory judgment action that could prejudice its insured in the state court suit[]." <u>Id.</u> This factor thus weighs in favor of our exercise of jurisdiction over Westfield's declaratory judgment action.

<u>Id.</u> at *3. <u>See</u> also <u>Essex Ins. Co. v. Oli-Car Inc.</u>, 2007 WL 2743840 (W.D. Pa. Sept. 18, 2007), in which the court accepted jurisdiction of a declaratory judgment action because it did not present an issue of unsettled law. The result should be no different here.

## IV.     CONCLUSION

        For the foregoing reasons, the Parties respectfully submit that this Court should retain jurisdiction of this action.


/s/Patrick A. Hughes  
Patrick A. Hughes, Esquire  
NELSON LEVINE DE LUCA & HAMILTON LLC  
518 E. Township Line Road, Suite 300  
Blue Bell, PA 19422  
215-358-5126(direct)  
215-358-5101 (fax)  
phughes@NLDHLAW.com  

Attorneys for Defendants, Certain Underwriters at Lloyd's, London Subscribing to Policy Number C5P31288 a/s/o Marianna Arakelova  

/s/William A. Rubert  
Francis J. Deasey, Esquire  
William A. Rubert, Esquire  
DEASEY, MAHONEY, VALENTINI & NORTH, LTD.  
1601 Market Street, Suite 3400  
Philadelphia, PA 19103-2301  
215-587-9400(tel.)  
215-587-9456 (fax)  
fjdeasey@dmvnlaw.com  

Attorneys for Defendant,  
Northfield Insurance Company  

/s/Joseph B. Silverstein  
Joseph B. Silverstein, Esquire  
Meaghan P. Londergan, Esquire  
GREEN, SILVERSTEIN & GROFF, LLC  
215 South Broad Street, Suite 700  
Philadelphia, Pennsylvania 19107  
Tel:  (215) 972-5520  
Fax:  (215) 972-5544  
jsilverstein@gsglawfirm.com  
mlondergan@gsglawfirm.com  

Attorneys for Plaintiff, KnightBrook Insurance Company  


Dated:  September 23, 2013

## CERTIFICATE OF SERVICE

I, Joseph B. Silverstein, hereby certify that on this date I caused true and correct copies of the foregoing Joint Memorandum of Law Concerning Abstention to be served as follows:

### VIA REGULAR MAIL

DNA Ambulance
c/o Marianna Arkelova
354 Garnder Street
Philadelphia PA  19116


s/ Joseph B. Silverstein


Dated:  September 23, 2013