IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KNIGHTBROOK INSURANCE CO. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 13-2961 |
| DNA AMBULANCE, INC., CERTAIN | : | |
| UNDERWRITERS AT LLOYD'S, | : | |
| LONDON SUBSCRIBING TO | : | |
| POLICY NUMBER C5P31288 a/s/o | : | |
| MARIANNA ARAKELOVA AND | : | |
| NORTHFIELD INSURANCE CO. | : | |

## MEMORANDUM

Dalzell, J.                                                December 16, 2013

## I.     Introduction

Knightbrook Insurance Co. ("Knightbrook") has filed a motion for reconsideration under Rule 59(e) regarding our October 2, 2013 Order declaring that it has a duty to defend its former insured, DNA Ambulance, Inc. ("DNA"), in an underlying state tort action and that the determination of any duty to indemnify DNA is not yet ripe.

Specifically, Knightbrook contends that we erred in determining that its policy's "Endangerment or Harm Exclusion" did not automatically bar coverage and by granting summary judgment against it without giving it the opportunity to provide relevant evidence. Knightbrook also seeks reconsideration because it argues that without a duty to indemnify there is no duty to defend, and that here it

had no duty to indemnify DNA. Finally, Knightbrook urges us to allow the parties to engage in discovery to determine on summary judgment that it has neither a duty to defend nor indemnify DNA.

Certain Underwriters at Lloyd's, London ("Lloyd's") oppose Knightbrook's motion for reconsideration but, at the same time, seek to piggyback on Knightbrook's submission of new evidence to urge us to hold that Knightbrook has both a duty to defend and a duty to indemnify DNA.

## II.   <u>Standard of Review</u>

A motion for reconsideration, in this District governed by Local Civil Rule 7.1(g), is generally treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e); <u>see</u> <u>In re Taylor</u>, 343 Fed. Appx. 753, 755 (3d Cir. 2009). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence, <u>see</u> <u>Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted).  In the context of a motion for reconsideration, "new evidence" is not evidence that a party obtains or submits to the court after an adverse ruling, but rather must be evidence that a party could not have earlier submitted to the court because that evidence was not available before court action.  <u>See</u> <u>Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.</u>, 602 F.3d 237, 252 (3d Cir.

2010).

Accordingly, a party seeking to alter or amend a judgment must show at least one of four reasons: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; (3) the need to correct a clear error of law or fact; or (4) prevention of a manifest injustice, see 11 Charles Alan Wright et al., Federal Practice & Procedure, §2810.1; see also Ballard v. City of Philadelphia, 2013 WL 5392736 at *2 (3d Cir. Sept. 27, 2013).

Reconsideration is not permitted to allow "a second bite at the apple," see Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1991), nor to reargue matters the trial court already resolved or relitigate points of disagreement between the Court and the moving party, In re Avendia Marketing Sales Practices and Products Liability Litigation, 2011 WL 4945713 at *1 (E.D.Pa. Oct. 14, 2011) (Rufe, J.) (internal quotation omitted).  Because federal courts have a strong interest in finality, motions for reconsideration should be granted sparingly, United States v. Bullock, 2005 WL 352854 at *1 (E.D.Pa. Jan. 24, 2005) (Kelly, J.). As then-Chief Judge Bartle put it, "A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one." Kennedy Indus., Inc. v. Aparo, 2006 WL 1892685 at *1 (E.D.Pa.

3

July 6, 2006).

## III.    **Factual and Procedural Background**

The undisputed facts are that in the early hours of December 27, 2010, an employee of DNA started the emergency vehicles in DNA's garage to warm the engines, Am. Comp., Ex. B at ¶ 7. When one of the ambulances wouldn't start the employee opened the hood and doused part of the engine with Johnson's Starting Fluid, id. ¶ 9. The vehicle backfired on the next attempt to start it, igniting a fire in the ambulance engine that spread to other parts of the garage, causing fire and smoke damage, id. at ¶¶ 10 and 11.

On May 16, 2012, Lloyd's sued DNA on behalf of the insured property owner in the Court of Common Pleas of Philadelphia County on a single count of negligence, alleging damage to both real and personal property in excess of $50,000, id. at ¶¶ 14-18. Over the next ten months the parties engaged in discovery in the state court proceeding by, inter alia, taking depositions, including that of the DNA employee whose use of starter fluid set events in motion, and by seeking expert reports about the circumstances of the fire, see Lloyd's Resp. in Opp., Ex. C and D.

On May 29, 2013, Knightbrook filed the complaint here seeking a declaratory judgment under 28 U.S.C. §§ 2201-2202 that its rights and

4

responsibilities under an auto insurance policy issued to DNA did not include a duty to defend or indemnify DNA in the state tort action. Knightbrook contended in its amended complaint that its commercial auto policy, issued to DNA to cover its ambulance fleet, provided DNA no property damage coverage, Am. Comp. ¶ 21, and that coverage for the property damage must instead come from Lloyd's or from Northfield Insurance Co. ("Northfield"), which each had issued a general liability policy to DNA, id. ¶¶ 15, 23 and 24. Knightbrook relied on the Care, Control or Custody Exclusion and the Endangerment or Harm Exclusion in the commercial auto policy issued to DNA to assert that coverage does not exist under that policy, id. at ¶¶ 26-31. In particular, with regard to the second exclusion, Knightbrook argued its policy did not cover DNA because of the DNA employee's willful act or knowing endangerment in using the starter fluid, id. at ¶¶ 30 and 31.

On August 2, 2013, Lloyd's, having paid on its insured's claim against DNA and now acting as subrogee, crossclaimed against Knightbrook and counterclaimed against Northfield, seeking a declaration from us that Knightbrook and Northfield's liability insurance policies provided coverage to DNA for the smoke and fire damage incurred to its insured's real property, Lloyd's Ans. ¶¶ 15, 16, 20 and 21. Northfield, for its part, admitted it had issued a liability policy to DNA but asserted that its policy does not afford coverage for the claims in the underlying action and that Knightbrook, in seeking its declaratory judgment, made

5

no allegation against Northfield nor sought recovery from it, Northfield Ans. ¶¶ 23, 24, and 33.

On September 10, 2013, the parties informed us during a Rule 16 pretrial conference that the state court tort action had been stayed pending our decision on Knightbrook's declaratory judgment complaint. We ordered the parties to brief us whether, in light of the pending state action, we should exercise our discretion under the federal Declaratory Judgment Act to decline declaratory relief, Sept. 10, 2013 Order.

On September 23, 2013, the parties jointly responded that there was no parallel state court action involving exactly the same issues as the matter before us and that the coverage issues in question (involving the Care, Custody or Control Exclusion and the Endangerment or Harm Exclusion) were not unsettled under Pennsylvania law. Jt. Mem. of Law at 9.

Accordingly, the parties agreed that the "only issue to determine [is] whether either of the [p]olicy exclusions bars coverage," id. at 13. As the parties reported in their joint memorandum that DNA is no longer in business--indeed, it did not enter an appearance before us and the Clerk of Court entered default against DNA on August 7, 2013--the real parties at interest here are the insurance companies.

On October 2, 2013, upon consideration of the parties' joint

6

conclusion that we should retain jurisdiction over Knightbrook's declaratory

judgment action, we declared that Knightbrook had a duty to defend DNA in the

underlying state court tort action as a matter of Pennsylvania law[1] and granted

Lloyd's motion for summary judgment as to Knightbrook's duty to defend, Oct. 2,

2013 Order. We also denied Knightbrook's motion as to its duty to defend and

dismissed without prejudice its action for a declaratory judgment on its duty to

indemnify as unripe, id.

On October 15, 2013, Knightbrook filed its motion for

reconsideration. On October 29, 2013, Lloyd's filed a response in opposition to

that motion, and on November 6, 2013, Knightbrook filed a reply.

## IV.    **Discussion**

Knightbrook urges us to reconsider our October 2, 2013 decision for

several reasons. First, it contends we should reconsider the application of the

Endangerment or Harm Exclusion here because we erred in granting judgment

without giving notice of our intent to rule on summary judgment. Knightbrook

Mem. of Law at 5 and 6. Had we provided such notice, Knightbrook contends, it

---

[1] We apply Pennsylvania law to the interpretation of the insurance policy because
the policy was issued in Pennsylvania to cover a Pennsylvania insured, and no
party has alleged the existence of any other governing law.

7

would have submitted evidence gathered in the underlying action showing that this exclusion precludes coverage.  Knightbrook also states this evidence also confirms that it has no duty to indemnify and that without such a duty there is no duty to defend.  Id. at 7.  Finally, Knightbrook seeks to put that evidence -- consisting of the deposition of the DNA employee who applied starter fluid and an engineering consultant's report -- before us now, id., Exs. D and E.

Lloyd's in its response does not actually oppose reconsideration of our October 2, 2013 Order, but argues that the evidence from the underlying action that Knightbrook submitted to us concerning the applicability of the Endangerment or Harm Exclusion is insufficient to relieve Knightbrook of its obligation to defend and indemnify DNA, Lloyd's Resp. in Opp. at 6.  Therefore, so Lloyd's theory goes, we should rely on its submissions of deposition testimony and expert reports, id. at Exs. C and D, and deem the matter ripe for an adjudication of Knightbrook's duty to indemnify DNA as well as to defend it.  Id. at 5.

### A.      Sufficiency of Notice

It is well-established that district courts may, under certain circumstances, enter summary judgment sua sponte when that disposition helps "secure the just, speedy, and inexpensive determination" of an action, see Fed. R. Civ. P. 1.  In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), then-Justice Rehnquist

8

observed that "district courts are widely acknowledged to possess the power to

enter summary judgments sua sponte, so long as the losing party was on notice that

she had to come forward with all of her evidence," Celotex, 477 U.S. at 326.[2]

      Our Court of Appeals in Gibson v. Mayor and Council of the City of

Wilmington, 355 F.3d 215, 223 (3d Cir. 2004), defined notice to mean "that the

targeted party had reason to believe the court might reach the issue and received a

fair opportunity to put its best foot forward," (citing Leyva v. On the Beach, Inc.,

171 F.3d 717, 720 (1st Cir. 1999) (internal quotation marks omitted).

      Our Court of Appeals further held that:

> "There are three different grounds on which [the court]
> could recognize an exception to the notice requirement in
> the case of sua sponte summary judgment--the presence
> of a fully developed record, the lack of prejudice, or a
> decision based on a purely legal issue[,]"

Id., 355 F.3d at 224.

      This holding echoes other Circuit Courts' reasoning. In Artistic

Entertainment, Inc. v. City of Warner Robins, 331 F.3d 1196 (11th Cir. 2003), the

---

[2] It was not until 2010 that the Federal Rules of Civil Procedure codified into a new
subdivision (f) what the Advisory Notes for the 2010 Amendment to Rule 56
called "procedures that have grown up in practice", which provides that "[a]fter
giving notice and a reasonable time to respond the court may grant summary
judgment for the nonmoving party; grant a motion on legal or factual grounds not
raised by the party; or consider summary judgment on its own."

Eleventh Circuit distinguished "sua sponte grants of summary judgment in cases involving purely legal questions based upon complete evidentiary records," from cases "involving factual disputes where the non-moving party has not been afforded an adequate opportunity to develop the record," id. at 1201.  Similarly, the Second Circuit held that "a sua sponte grant of summary judgment. . . may be appropriate if. . . no material dispute of fact exists and . . . the other party is entitled to judgment as a matter of law," Bridgeway Corp. v. Citibank, 201 F.3d 134, 140 (2d Cir. 2000); see also Osler Institute, Inc. v. Forde, 333 F.3d 832 (7th Cir. 2003).

Our Court of Appeals has held that "It is entirely appropriate for courts to recognize a procedure allowing them to grant summary judgment on their own initiative, for courts' resources are limited and they should not be required to use those resources to conduct an unnecessary trial[.]" Acumed LLC v. Advanced Surgical Services, Inc., 561 F.3d 199, 224 (3d Cir. 2009).

It is well-settled in Pennsylvania that the interpretation of an insurance policy is a question of law. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006).  "[T]he interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 595 (3d Cir. 2009) (summarizing Pennsylvania law)(internal quotation marks omitted).

10

Therefore, when Knightbrook sought a declaratory judgment to determine its rights and obligations under the policy it issued to DNA, our inquiry was (and remains) a purely legal one, particularly as to the duty to defend which we will soon canvass.  There was no question on which Knightbrook could marshal evidence to put a better foot forward.  As such, our construction of the policy is an exception to the Rule 56 notice requirement that our Court of Appeals recognized in <u>Gibson</u>.  Thus it was not legal error for us to grant summary judgment as a matter of law, and so Knightbrook's motion for reconsideration must fail on this ground.

### B.     The Duty To Defend Under Pennsylvania Law

Under Pennsylvania law the "first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage" and then to "examine the complaint in the underlying action to ascertain if it triggers coverage," <u>General Accident Ins. Co. of Am. v. Allen</u>, 692 A.2d 1089, 1095 (Pa. 1997) (internal citations omitted).  An insurer's duties to defend and indemnify its insured depend upon the court's "determination of whether the [underlying] complaint triggers coverage," <u>Donegal Mut. Ins. Co. v. Baumhammers</u>, 938 A.2d 286, 290-91 (Pa. 2007) (citing <u>Mutual Benefit Ins. Co. v. Haver</u>, 725 A.2d 743, 745 (Pa. 1999)).

11

As the Pennsylvania Superior Court held in <u>Erie Insurance Exchange</u>

<u>v. Fidler</u>, 808 A.2d 587 (Pa. Super. 2002),

> As long as a complaint alleges an injury which may be
> within the scope of the policy, the insurer must defend its
> insured until the claim is confined to a recovery the
> policy does not cover[,]

<u>Id.</u> at 590 (citing <u>Germantown Ins. Co. v. Martin</u>, 595 A.2d 1172, 1174 (Pa. Super.

1991).

Lloyd's state court complaint alleged a single count of negligence

concerning the property damage that Lloyd's contends a DNA employee caused

by:

> (a)     Carelessly   using   a   highly   flammable
> liquid.... ;
> (b)     Carelessly spraying and/or applying a highly
> flammable liquid into the engine compartment of a diesel
> vehicle with glow plugs;
> (c)     Carelessly spraying and/or applying a highly
> flammable liquid. . . into the air take. . .;
> (d)     Creating a dangerous and/or hazardous
> condition on the subject property; [or]
> (e)     Failing to read the warnings associated with
> the Johnson's Starting Fluid before using same in a diesel
> vehicle with glow plugs[.]

Jt. Mem. of Law, Ex. A at 4 and 5.

Knightbrook argues that its Endangerment or Harm Exclusion

precludes coverage and that the parties should have been afforded "an opportunity

to oppose summary judgment by bringing those facts to the Court's attention that

12

would support their positions," Pl. Mem. of Law in Sup. of Mot. to Recons. at 6.

That provision states:

> We do not insure bodily injury or property damage which
> is a consequence of an insured's willful act or knowing
> endangerment.

Id. at 7 (emphasis omitted).

This position misconstrues Pennsylvania insurance law in several ways, most notably because it is beyond peradventure of doubt that an insurer's duty to defend is determined solely from the language of the underlying complaint against the insured, see Haver, 725 A.2d at 745. As the Supreme Court of Pennsylvania stated in Kvaerner, "[w]e find no reason to expand upon the well-reasoned and long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself." Kvaerner, 908 A.2d at 896.[3] Likewise, "an insurer is not required to defend a claim when it is apparent on the face of the complaint that none of the injuries fall within the purview of the insurance [p]olicy," Regent Ins. Co. v. Strausser Enterprises, Inc., 902 F.Supp.2d 628, 636 (E.D.Pa 2012) (Gardner, J.) (citing Kvaerner, 908 A.2d at 897).

---

[3] Nearly sixty years ago, the Supreme Court of Pennsylvania explained that "the rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action[.]" Wilson v. Maryland Cas. Co., 105 A.2d 304, 307 (Pa. 1954) (emphasis added).

13

To determine whether coverage has been triggered, Pennsylvania law obliges the court "to look at the factual allegations contained in the complaint," Haver, 725 A.2d at 745, and not rely merely on the cause of action pled. Many years ago the Supreme Court of Pennsylvania stated, "It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." Springfield Tp. et al. v. Indemnity Ins. Co. of North America, 64 A.2d 761, 762 (Pa. 1949). Indeed, the duty to defend is not limited to meritorious actions but extends to actions that are "groundless, false, or fraudulent" if the possibility exists that the allegations implicate coverage, see American and Foreign Ins. Co. v. Jerry's Sport Center, Inc., 2 A.3d 526, 541 (Pa. 2010) (internal quotation omitted).

Under Pennsylvania law, exclusions for intentional acts apply only where the insured acted intentionally and intended the resulting damage. United Services Auto. Assn. v. Elitzky, 517 A.2d 982, 987 (Pa. Super. 1986); see also First Pa. Bank, N.A. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 580 A.2d 799, 802 (Pa. Super 1990) ("[E]xclusionary clauses should be strictly construed as a general matter."). Knightbrook's policy exclusion for harm "which is a consequence of an insured's willful act or knowing endangerment" constitutes precisely such an exclusion. Mem. of Law at 7. Lloyd's alleges no facts that would support a finding of intent by the DNA employee that she "desire to cause

14

the consequences of [her] act or . . . acted knowing that such consequences were substantially certain to result," Elitzky, 517 A.2d at 989.  Therefore Knightbrook's exclusion does not bar coverage here.

Finally, reviewing courts have deemed it error under Pennsylvania law when the trial court looks beyond the complaint to determine the contours of coverage.  Kvaerner, for example, held the lower court "erred in looking beyond the allegations raised in [the c]omplaint to determine whether [the insurer] had a duty to defend."  Kvaerner, 908 A.2d at 896.

Our determination about Knightbrook's duty to defend DNA thus turned entirely on a purely legal question, and, as such, it falls within the well-established exception Gibson articulated to the Rule 56 notice requirement.  Thus it was not legal error for us to grant summary judgment as a matter of law to Lloyd's; Knightbrook's motion for reconsideration fails on this ground as well.

### C.      Knightbrook's Duty To Indemnify And New Evidence

Both Knightbrook and Lloyd's seek to put before us evidence they developed in the underlying state court proceedings.  That evidence consists of a deposition of the DNA employee who doused the ambulance engine with starter fluid as well as three expert reports in letter form.

Knightbrook argues that (1) the evidence from the underlying action

15

establishes there is no coverage, and thus it has no duty to indemnify or to defend DNA; (2) somewhat contradictorily, we should allow the parties to engage in discovery in this Court before deciding any summary judgment; and (3) the determination of its duty to indemnify is not ripe because the underlying tort action was stayed, Pl. Mot. to Recons. and Reply Br.

Lloyd's argues that the evidence is sufficient for us to determine that Knightbrook has a duty to indemnify DNA, Def. Reply in Opp. at 15.

Knightbrook's first contention fails as a matter of Pennsylvania law. As we were at pains to explain above, the complaint alone triggers the initial coverage inquiry, which determines the duty to defend. "[T]he duty to defend is separate from and broader than the duty to indemnify, [but] both duties flow from a determination that the complaint triggers coverage." Allen, 692 A.2d at 1095. It is true that a finding that there is no duty to defend necessarily means there is no duty to indemnify, see Kvaerner, 908 A.2d at 896 n.7. But a ruling as to the duty to defend cannot automatically resolve the duty to indemnify which is tethered to the facts of the underlying action.

Resolution of Knightbrook's duty to indemnify DNA thus requires us to reach into the details of the state tort action where the parties have spent months developing their evidence. We declined to do this at the time of our Order and we decline again now. Such determinations are best left to the court deciding the

16

underlying lawsuit. As Judge Rovner explained Pennsylvania law for the Seventh Circuit in <u>Nationwide Insurance v. Zavalis</u>, 52 F.3d 689, 693 (7th Cir. 1995), "It is thus settled in Pennsylvania that the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit" (citing <u>Heffernan & Co. v. Hartford Ins. Co. of America</u>, 614 A.2d 295, 298 (Pa. Super. 1992) and <u>Elitzky</u>, 517 A.2d at 992).

Our Court of Appeals has noted the "potential conflict of interest problem if the same factual question lies at the heart of both an insurance coverage dispute and the underlying tort action," <u>Terra Nova Insurance Company v. 900 Bar, Inc.</u>, 887 F.2d 1213, 1225 (3d Cir. 1989) (quoting Kirkland & Berkeley, <u>Declaratory Judgment Suits: Use in Insurance Coverage Litigation</u>, 33 Fed'n of Ins. Counsel Q. 243, 252 (1983) (concluding that "a finding in the declaratory judgment would have <u>res judicata</u> effect on the outcome of the tort case, and is therefore inappropriate")).

As to Knightbrook's remaining contentions and Lloyd's efforts to put the evidence developed in the state court action before us, Rule 59(e) requires that evidence presented in a motion to reconsider must be newly discovered, <u>i.e.</u> facts that the movant was excusably ignorant of at the time of submission to the Court. 11 Charles Alan Wright et al., <u>Federal Practice & Procedure</u>, §2808.

In any event, and as our Court of Appeals has recognized, any party

17

requesting such relief bears a heavy burden, see Compass Technology, Inc. v.

Tseng Laboratories, Inc., 71 F.3d 1125, 1130 (3d Cir. 1995).  Neither party meets

that burden here.  Clearly, the proffered state-court evidence is not newly

discovered.   The December 20, 2012 deposition existed before this action was

filed, see  Def. Reply in Opp., Ex. C., and the expert reports apparently did as well,

id. at D (dated January 19, 2011) and E (dated March 7, 2013); Pl. Mot. to recons.,

Ex. E (undated).

      More importantly, such evidence would not change the result.  As we

explain above, Knightbrook's duty to indemnify is not ripe for adjudication until

the insured is held liable, if at all, in the underlying suit.  We therefore decline to

enmesh ourselves in any potential collision with the state court over determinations

of the same factual question.

## V.    Conclusion

      For the reasons stated herein, we will deny Knightbrook's motion for

reconsideration.

18